# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**  ) | |
| ) | |
| **V.**  ) | **14-CR-10022-WGY** |
| ) | |
| **SANFORD MEEKINS**  ) | |

## <u>AFFIDAVIT OF ELLEN COLE</u>

Now comes ELLEN COLE and on oath does depose and say as follows:

1. I currently reside at 149 Whittier Meadows, Amesbury, Massachusetts 01913 and have lived there since 2013 with the defendant, Sanford Meekins.

2. From 2005-2013, I lived out-of-state and held a variety of employment positions, chiefly with Home Depot and later with Choice Point Inc., where I performed computerized background checks for clients of the entity. My then husband and I had relocated to New Mexico from New Hampshire upon his retirement from Redlon & Johnson Supply of Portsmouth, New Hampshire.

3. I am originally from Straham, New Hampshire and became acquainted with the defendant, Sanford Meekins, during the years, as we attended high school together in Exeter, New Hampshire.

4. For the majority of my life, I lived in Greenland, New Hampshire with my then husband and our two children (now ages forty-seven (47) and forty-four (44)).

5. In addition to working within the home, I was employed for approximately twenty (20) years at Redlon & Johnson Supply, initially as that business' accounts receivable and subsequently as its accounts payable bookkeeper.

1

6. Prior to establishing a residence with Mr. Meekins in 2013, I was aware that he possessed a criminal history and that he had been convicted in the District of New Hampshire in 1998 of wire fraud and as a result of each conviction, again in 2005 in the same federal district of bank fraud and had been sentenced to a term of incarceration following each conviction (1998 – 24 months and 2005 – 30 months). I was also generally aware of the facts and circumstances underlying each conviction.

7. I am also aware that Mr. Meekins had been hospitalized in the past and had been treated for anxiety and depression. To my understanding, these conditions continue at present although in the main they are controlled with/or respond well to medications which he currently takes on a daily basis.

8. In September of 2013, Mr. Meekins experienced a number of cardiac incidents which necessitated his hospitalization during which time a pacemaker/defibrillator was surgically implanted in him. I understand that stress, anxiety and depression, while not exclusively responsible, played a part in the occurrence of Mr. Meekins' heart related incidents.

9. On September 23, 2013, I invested thirty-five thousand ($35,000.00) dollars with Natural Waters Inc., a venture I heard about from Mr. Meekins. I met with Mr. Edmond LaFrance when I invested my money with Natural Waters Inc. and received the annexed Promissory Note (**Exhibit "A"**) in exchange for the bank check I provided.

10. Prior to occurrence of this transaction, I had met Judith O'Brien socially[1] and was aware from Mr. Meekins that she previously had invested a considerable sum of money with Edmond LaFrance through Mr. Meekins and that this loan was still outstanding.

---

[1] We met at the Salem Hospital arriving separately to visit Mr. Meekins during the first of his cardiac related hospitalizations in July, 2013.

11. In January, 2014, United States Probation Officer Thomas Mullen came to our home in Amesbury, Massachusetts. On that first time that I met him, Mr. Mullen spoke with me privately then and again in April or May of 2015 – at his office in Lawrence, Massachusetts. I had seen and spoken with him on other occasions also.

12. During my private meetings with Mr. Mullen, he primarily inquired of my investment in Natural Waters Inc. and during our discussion of the topic, he stated words to the effect of "you know you won't get any money back on this!" I acknowledged that I heard and understood what he was telling me.

13. This understanding continues to the present day. Subsequently, and at my most recent discussion with Mr. Mullen, he then focused principally on my recent purchase of a 2014 Mustang automobile, asking if Mr. Meekins was allowed to operate that vehicle. I responded yes but I couldn't think of a time that Mr. Meekins did so without me being in the car as a passenger. Mr. Mullen was critical of my purchase of this automobile at this time saying words to the effect of "it just didn't look right for Mr. Meekins to be at the wheel of that car owing all that money to Ms. O'Brien". I told Mr. Mullen that the vehicle was mine and I paid for it from my funds and acquired it simply because "I always wanted a Mustang".

14. With regard to the $35,000.00 I invested with Natural Waters Inc., I reviewed a draft of a proposed plea agreement between Mr. Meekins and the United States which mentions me by name. I certainly do expect and hope that I realize a return on investment with Natural Waters Inc. However, I did not invest the money with Mr. Meekins; the recipient was the entity Natural Waters, Inc. and its principal, Edmond LaFrance.

15. I do state that I made the investment with my "eyes open" and acknowledge that the catalyst for my participation in the transaction was Mr. Meekins, but I was aware of the substantial uncompensated effort he had expended in researching the underpinnings of this venture at the time that I made the decision to invest. A substantial motivating factor in deciding to take this course was the sincerity of Mr. Meekins' commitment to the success of the project and his belief in its genuineness and eventual viability of the endeavor.

16. With reference to the statement attributed to me in the Amended Petition on February 11, 2014 that (presumably Mr. Mullen) was informed by me that the money was only lent (to Natural Waters Inc. and Mr. LaFrance) because the offender told her that "she would double her money". I deny using that phraseology to Mr. Mullen or attributing those words to Mr. Meekins during my discussion with the probation officer.

17. Mr. Meekins did indicate that any funds provided to Natural Waters Inc. would earn more than bank interest on a CD even though the lack of insurance made such investment riskier. I was aware of that distinction prior to making the loan to Natural Waters Inc. and Mr. LaFrance. I believe I clearly indicated as much to Mr. Mullen during our discussion of my decision to invest my money.

18. I made no complaint to federal or state authorities about this transaction and do not wish to participate in this proceeding as a "victim" of Mr. Meekins. I have been involuntarily included in this proceeding, and while I do not question the good faith or sincerity of those including me, simply state that their goals or view of this matter are not shared by me.

4

Signed and Subscribed, Under the Pains and Penalties of Perjury, on this _28th_ day of
July, 2015.

_Ellen W. Cole_
Ellen Cole

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on July 28, 2015.


Date: July 28, 2015                    /s/ George F. Gormley
                                       George F. Gormley